Darrell P. White (SBN: 270038)
Michelle E. Soon (SBN: 329098)
David J. Steadmon (SBN: 333963)
**KIMURA LONDON & WHITE LLP**
3 Park Plaza, Suite 1520
Irvine, California 92614
(949) 474-0940
dwhite@klw-law.com
msoon@klw-law.com
dsteadmon@klw-law.com

Attorneys for Plaintiff JESSIE RODRIGUEZ, an individual, and CAL AMERICAN HOMES AND REALTY, a California Corporation

# UNITED STATES DISTRICT COURT

# THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSIE RODRIGUEZ, an individual; CAL AMERICAN HOMES AND REALTY, a California Corporation, <br><br> Plaintiff, <br><br> v. <br><br> ENGEL & VOLKERS AMERICAS, INC., a Delaware Corporation; and DOES 1 to 100, <br><br> Defendant. | Case No.: <br><br> **COMPLAINT FOR:** <br> 1. **FRAUD IN THE INDUCEMENT;** <br> 2. **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE;** <br> 3. **NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE; AND** <br> 4. **VIOLATION OF CALIFORNIA BUS. AND PROF. CODE §§17200** *et seq.* |

1

COMPLAINT

Plaintiffs Jessie Rodriguez and Cal American Homes hereby allege as follows:

## THE PARTIES

1. Plaintiff JESSIE RODRIGUEZ ("RODRIGUEZ") is and at all times relevant to the complaint hereto was an individual residing in Los Angeles, California.

2. Plaintiff CAL AMERICAN HOMES AND REALTY ("CAL AMERICAN") is and at all times relevant to the complaint hereto was a corporation registered and with its principal place of business in California. (Collectively, RODRIGUEZ and CAL AMERICAN referred to as the "Plaintiffs").

3. Defendant ENGEL & VOLKERS AMERICAS, INC. ("E&V" or "Defendant") is and at all times relevant to the complaint hereto was a Delaware Corporation with its principal place of business in New York. At all times relevant hereto, E&V conducted business in California.

4. The true names and capacities, whether individual, corporate, associate, partner, or otherwise, of DOES 1 through 100 inclusive, are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names. Plaintiffs will move to amend this complaint to show their true names and capacities when the same have been ascertained.

5. Plaintiffs are also unaware of the basis of liability as to some or all of the fictitious Defendants sued herein as DOES 1 through 100, inclusive, but believe that their liability arises out of the same general facts as set forth herein. Plaintiffs will move to amend this complaint to assert the theories of liability of said fictitiously named Defendants when the same have been ascertained.

6. Plaintiffs are informed and believe, and on that basis allege, that at all times relevant to this complaint, there existed and still exists a unity of interest and ownership between some portion of the DOE defendants who are individuals,

partnerships, and/or corporations, and Defendant, such that any individuality, independence, and separateness between them ceased such that the DOES are the alter egos of Defendant. These DOES used the assets of Defendant for their own personal use. As such, Defendant is, and at all times relevant to this complaint was, a mere shell, instrumentality, or conduit through which these DOES carried on their business, exercising complete control and dominance of those entities to such an extent that any individuality, independence, or separateness between these DOES and Defendant is fictional and did not and does not exist.

## VENUE

7. Venue is proper in this court as some or all of the events and happenings herein alleged giving rise to this complaint occurred within the jurisdictional district and jurisdictional monetary amount in excess of $75,000, of the above-entitled court.

## GENERAL ALLEGATIONS

8. Allegations made in this complaint that pertain to Plaintiff are made upon information and belief, unless otherwise indicated.

9. CAL AMERICAN is a residential real estate service that assists individuals in buying and selling residential real property in the Los Angeles, California area.

10. Defendant E&V is a multinational real estate brokerage that has franchise locations around the United States and the rest of the world. E&V's primary goal with respect to CAL AMERICAN was to use CAL AMERICAN as a franchise location to obtain royalties from sales made by CAL AMERICAN. In return, E&V would provide training and techniques that were purportedly of great value and would increase CAL AMERICAN's sales.

11. On or about May 13, 2020, Plaintiff RODRIGUEZ, acting in his capacity as principal for Plaintiff CAL AMERICAN, signed a franchise agreement ("Agreement") with Defendant E&V. A true and correct copy of the Agreement is attached hereto as Exhibit "A" and incorporated herein by reference.

12. The Agreement provides at Item 5 that the franchisee must pay a non-refundable "Admission Fee" in order to obtain the benefits of the Agreement, such as training and the protected area. CAL AMERICAN never paid any fees to E&V. The Agreement not only provided for a very large amount of royalties and fees to be paid to E&V, but also included a purportedly strict covenant not to compete during the term of the Agreement. (See Agmt., Items 5, 6, 7, and Exhibit C, Appendix 4.) The term of the Agreement was to last for ten years. (Agmt., Item 17.)

13. The Agreement further dictated that E&V would allow CAL AMERICAN to work within a "protected area" where they would not have to be in direct competition with other E&V franchises. (Agmt., Item 12.)

14. The Agreement described at great length that E&V would provide valuable trade secrets to CAL AMERICAN, and that this proprietary information had to be safeguarded and could not be shared with anyone else. (Agmt. Item 1, Exhs. C, F). This gave Plaintiffs the illusion of a great wealth of knowledge that CAL AMERICAN would benefit from. In reality, the very limited information shared had essentially no value. The training provided was very cursory, basic, and did not provide any new or useful information to Plaintiffs.

15. The Agreement provided for mandatory training which Plaintiff RODRIGUEZ was supposed to undergo in his capacity as principal for CAL AMERICAN. After attending approximately four hours of the scheduled training sessions, Plaintiff RODRIGUEZ began to see and understand that the training was nowhere near the quality or caliber that E&V had promised. Plaintiff RODRIGUEZ's assistant also attended a short amount of training and confirmed to RODRIGUEZ that the training was of poor quality.

16. E&V's conduct and the Agreement gave the impression of incredibly valuable training to be given to the franchisee, CAL AMERICAN. However, the Agreement and the training were of little value to the Plaintiffs. Plaintiff

RODRIGUEZ only needed to see a small portion of the training to realize that it would not be worth his time and effort.

17. Shortly after attending the limited training, RODRIGUEZ spoke to E&V's agent, ("JS") and informed JS that he did not wish to continue with the Agreement because of the poor quality of the training and the high amount of capital investment required for such a sub-par product. During the meeting between Plaintiff RODRIGUEZ and JS, numerous excuses were made as to why the training was not what was promised, RODRIGUEZ stated that he did not wish to continue with the relationship. At the end of this meeting, it was clear to both RODRIGUEZ and JS that the relationship had been terminated. JS never indicated to RODRIGUEZ that Plaintiffs were bound to E&V in any way, and he essentially wished RODRIGUEZ luck in his future endeavors.

18. Following this meeting, RODRIGUEZ sent a confirming email message to E&V indicating that the business relationship had been terminated. This email message was a written memorialization of the understanding between RODRIGUEZ and JS, acting in his capacity as an agent for E&V. E&V therefore knew that Plaintiffs were pursuing other business opportunities at that time.

19. Following the termination of the Agreement between Plaintiffs and E&V, RODRIGUEZ, acting in his capacity as the principal for CAL AMERICAN, sought out alternative business relationships through the creation of a new franchise relationship with another party.

20. Following a meeting regarding a new franchise investment opportunity, RODRIGUEZ received notice of Defendant's claim that Plaintiffs were in breach of the Agreement. E&V claimed that Plaintiffs could not enter into franchise relationships with other potential franchisors, pursuant to the covenant not to compete contained in the Agreement.

21. Plaintiffs lost a valuable business opportunity as a result of the Defendant's actions. Plaintiffs continue to be harmed daily by the ongoing insistence of

Defendant to attempt to enforce the Agreement after its termination, by, including but not limited to, E&V demanded money damages from Plaintiffs, and Plaintiffs lost new business relationships given E&V's baseless claims against Plaintiffs.

22. With the current climate of the Southern California residential real estate market, E&V would likely have been able to secure an alternative franchisee rather easily had they exercised any real effort in doing so. However, instead of exercising even minimal effort to find a new franchisee, E&V intentionally interfered in Plaintiff's business relationship with a third party and caused damage to Plaintiff's reputation and business relationships.

23. In sum, E&V actively encouraged Plaintiffs to enter into the franchise relationship with promises of incredibly valuable training and other consideration, yet E&V failed to deliver on its bargain after Plaintiff signed the Agreement and devoted time and energy to taking part in the limited training. E&V instead delivered a poor product of little or no value to Plaintiffs, which leads to the conclusion that E&V never fully intended to provide any great value to Plaintiffs.

24. On April 2, 2021, Plaintiffs sent a final demand letter to E&V, setting forth their dispute and demand for immediate action by E&V and for damages. A true and correct copy of the letter is attached hereto as Exhibit "B" and incorporated herein by reference.

## FIRST CAUSE OF ACTION
### (Fraud in the Inducement Against all Defendants)

25. Plaintiffs incorporate preceding paragraphs 1 through 24 as though fully set forth herein.

26. E&V committed all acts stated in paragraphs 10, 11, 12, 13, 14, 15, 16, 17, 18, 20, 21, and 23 as set forth hereinabove.

27. Defendant E&V fraudulently induced RODRIGUEZ and CAL AMERICAN to enter into the Agreement by knowingly making material misrepresentations of facts that Defendant knew or should have known were false,

including, but not limited to,

    a. E&V had a proprietary training system that would help to grow Plaintiff's business and reach and that would help increase profits;

    b. E&V would provide the training to CAL AMERICAN's principals and employees as a part of the Agreement; and

    c. The training to be offered was of great value and would expand Plaintiff's knowledge of the business of real estate sales.

28. As described herein, E&V made certain false statements to Plaintiffs that were material to Plaintiff's decision to enter into the Agreement with E&V. This representation involved the quality and the value of the training and related services to be provided by E&V under the Agreement. E&V claimed that the training was of high quality and would provide Plaintiffs with knowledge that would allow them to excel in the area of residential real estate. E&V further suggested that the services to be rendered would increase the sales of CAL AMERICAN and would allow the business to grow and flourish. However, all of these representations turned out to be false.

29. The material misrepresentations made to CAL AMERICAN by E&V were false and were either known by E&V to be false or should have been known to be false.

30. E&V intended for CAL AMERICAN to rely on these material misrepresentations, and CAL AMERICAN did in fact so rely on such misrepresentations. CAL AMERICAN executed the Agreement with E&V as a result of and in reliance of the material misrepresentations made by E&V.

31. Plaintiff's reliance on the material misrepresentations by E&V was reasonable as E&V held themselves out to Plaintiff as experts in the field of residential real estate and Plaintiff had no reason to doubt such assertion until he had undergone a portion of the training program required under the Agreement.

32. The conduct of Defendants was intentional and committed willfully,

maliciously, with fraud, oppression, ill will and in conscious disregard of Plaintiffs' rights, and constitutes clear and convincing evidence of despicable, outrageous, oppressive, and malicious conduct pursuant to California Code of Civil Procedure section 3294. Plaintiffs are entitled to punitive and exemplary damages against Defendants, in an amount as the jury may find necessary for the sake of example to punish Defendants for their unlawful conduct and in an amount sufficient to deter Defendants, from engaging in similar conduct against others in the future.

33. As a direct result of E&V's misrepresentations, Plaintiff has incurred and continues to incur damages, including but not limited to, the inability to secure alternative franchise relationships from E&V's insistence that the covenant not to compete is enforceable, loss of potential profits to have been made from securing alternative business relationships, and attorney's fees and costs related to enforcing their rights under California law. Plaintiff is therefore entitled to damages, both actual and punitive, recission of the Agreement, as well as attorney's fees and costs.

## SECOND CAUSE OF ACTION

**(Intentional Interference with Prospective Economic Advantage Against all Defendants)**

34. Plaintiffs incorporate preceding paragraphs 1 through 24 as though fully set forth herein.

35. E&V committed all the acts stated in paragraphs 17, 18, 20, and 23 as set forth hereinabove.

36. In or around October 2020, Plaintiff established a business relationship with a third party that would have provided CAL AMERICAN with great economic benefit through the creation of an alternative franchise relationship.

37. Around that same time, E&V insisted on enforcement of the Agreement and the purported covenant not to compete against CAL AMERICAN, even though in

the Agreement E&V actually acknowledged that the covenant not to compete "may not" be valid or enforceable. The covenant not to compete is not valid or enforceable under California law. See e.g., *Comedy Club, Inc., v. Improv West Associates*, 553 F.3d 1277,1292 (9th Cir. 2009) (internal quotations omitted) quoting *Kelton v. Stravinski*, (2006) 138 Cal.App.4th 941, 947-48 ("In the franchise context, Cal. Bus. & Prof. Code § 16600 prohibits an in-term covenant not to compete that will foreclose competition in a substantial share of the affected line of commerce.") See also *Ixchel Pharma LLC v. Biogen Inc.*, (2020) 9 Cal.5th 1130, 1163 (holding that a "rule of reason" applies to contractual provisions that prevent one business from engaging in lawful conduct with another.) Notice of E&V's threats and demand for damages regarding the purported covenant not to compete caused Plaintiffs' new business agreement with a third party to cease, because the third party did not wish to be embroiled in litigation.

38. In spite of the fact that the covenant not to compete is unenforceable in California and E&V was aware that the covenant was not enforceable, E&V still took the aforementioned actions and otherwise harassed Plaintiffs.

39. E&V knew of CAL AMERICAN's new business relationship or quickly learned of its existence and took the above referenced actions to interfere.

40. E&V's contact with the potential franchisor disrupted the relationship between the franchisor and CAL AMERICAN as CAL AMERICAN was then unable to secure that coveted franchise agreement.

41. CAL AMERICAN suffered and continues to suffer harm due to the willful, malicious actions of E&V in that CAL AMERICAN has been unable to partner with other businesses in order to earn a greater market presence and therefore greater profits.

42. The conduct of Defendant was intentional and committed willfully, maliciously, with fraud, oppression, ill will and in conscious disregard of Plaintiff's rights, and constitutes clear and convincing evidence of despicable,

outrageous, oppressive, and malicious conduct pursuant to California Code of Civil Procedure section 3294. Plaintiff is entitled to punitive and exemplary damages against Defendant, in an amount as the jury may find necessary for the sake of example to punish Defendant for their unlawful conduct in an amount sufficient to deter Defendant, from engaging in similar conduct against others in the future.

43. As a direct and proximate result of Defendant's conduct, Plaintiffs were harmed by Defendant's conduct in an amount of at least $250,000, as well as attorney's fees and other litigation costs, according to proof at trial. Plaintiff seeks all damages as well as pre-judgement and post judgement interest.

## THIRD CAUSE OF ACTION

**(Negligent Interference with Prospective Economic Advantage Against all Defendants)**

44. Plaintiffs incorporate preceding paragraphs 1 through 24 above, as though fully set forth herein.

45. Defendant E&V committed all of the acts stated in paragraphs 17, 18, 20, and 23 as set forth hereinabove.

46. In or around October 2020, Plaintiff CAL AMERICAN established a new potential franchise relationship with a third party that would have provided a great financial benefit to Plaintiffs.

47. E&V insisted on attempting to enforce the covenant not to compete against CAL AMERICAN, even though E&V acknowledged in the Agreement that the covenant not to compete would likely not be enforceable under California law. As noted above, the covenant not to compete is invalid under California law. See *Comedy Club, supra,* at 1292, quoting *Kelton, supra* at 947-48. See also *Ixchel, supra,* at 1163. Notice of E&V's threats and demand for damages regarding the purported covenant not to compete caused Plaintiffs' new business agreement with a third party to cease, because the third party did not wish to be embroiled in

COMPLAINT

litigation.

48. E&V knew, suspected, or should have known that the purported covenant not to compete was not enforceable under California law as evidenced by the fact that E&V alluded to this possibility in the Agreement.

49. In spite of the fact that the covenant not to compete is unenforceable in California and E&V was aware that the covenant was not enforceable, E&V still took the above referenced acts to interfere.

50. E&V's wrongful contact with the potential franchisor disrupted the relationship between the franchisor and CAL AMERICAN because CAL AMERICAN was unable to secure that coveted franchise agreement.

51. As a direct and proximate result of Defendant's conduct, Plaintiffs were harmed by Defendant's conduct in an amount of at least $250,000, according to proof at trial. Plaintiff seeks all damages.

## FOURTH CAUSE OF ACTION

**(Violation of California Bus. and Prof. Code §§ 17200 Against all Defendants)**

52. Plaintiff incorporates preceding paragraphs 1 through 24 above, as though fully set forth herein.

53. Business and Professions Code section 17200, *et seq.* (Unfair Competition Law or UCL) prohibits any unlawful, unfair, or fraudulent business act or practice, any unfair, deceptive, untrue, or misleading advertising, and any violation of Business and Professions Code section 17500 *et seq.*

54. By the foregoing alleged acts set forth in paragraphs 10 through 23, E&V perpetrated business acts that are unlawful, unfair, and/or fraudulent under the UCL because those acts are prohibited under California law and are fraudulent or unfair to Plaintiffs.

55. E&V's unlawful acts violated the California Franchise Investment Law ("CFIL"), codified at Corporations Code §§ 31200-31203 *et seq* by, among other things, making material misrepresentations regarding the quality and content of its

COMPLAINT

training program.

56. E&V violated the California Franchise Relations Act ("CFRA") codified at Bus. and Prof. Code § 20021(c), *et seq* by, among other things, refusing to allow for the termination of the Agreement in writing, as the email sent by RODRIGUEZ following his discussion with JS served as a written memorialization of the termination of the Agreement.

57. The unlawful, unfair, and fraudulent practices of Defendant, as outlined above, present a continuing threat and an ongoing injury to Plaintiffs, which in the absence of equitable or injunctive relief, will continue to be unable to take advantage of business opportunities and will potentially lose those opportunities to competitors. Plaintiffs request injunctive relief enjoining E&V from further misconduct through similar actions as those referenced herein.

58. Plaintiffs additionally request actual damages, in an amount to be proven at trial and attorney's fees and costs.

## PRAYER FOR RELIEF

59. Plaintiffs incorporate all preceding paragraphs as though fully set forth herein. WHEREFORE, Plaintiffs pray for judgement against Defendant as follows:

For the First Cause of Action:

1. For punitive damages in an amount subject to proof at trial;
2. For recission of the Agreement; and
3. For pre-judgement and post judgement interest.

For the Second Cause of Action:

1. For punitive damages in an amount subject to proof at trial; and
2. For Pre-judgement and post judgement interest.

For the Fourth cause of Action:

1. For injunctive relief preventing Defendant from misleading other franchisees and potential franchisees in the same way as the Plaintiffs

herein; and

2. For pre-judgement and post judgement interest.

As to all Causes of Action:

1. For actual damages in an amount of no less than $250,000, subject to proof at trial; and

2. For attorney's fees and costs incurred in enforcing Plaintiff's rights.

Dated: April 6, 2021                          **KIMURA LONDON & WHITE LLP**

By:   */s/ Darrell P. White*
      Darrell P. White, Esq.
      Attorney for Plaintiffs

## DEMAND FOR JURY TRIAL

1. Plaintiffs hereby demand a trial by jury.

Dated: April 6, 2021    **KIMURA LONDON & WHITE LLP**

By:  */s/ Darrell P. White*
     Darrell P. White, Esq.
     Attorney for Plaintiffs